IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DAWN REPPOND, | ) | |
| 1505 N Hunter Dr. | ) | |
| Olathe, Kansas 66061, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| CITY OF OLATHE, KANSAS | ) | JURY TRIAL DEMANDED |
| (Serve: | ) | |
| Brenda Long | ) | |
| City Clerk of Olathe, Kansas | ) | |
| 100 E. Santa Fe Street | ) | |
| Olathe, Kansas 66061), | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Plaintiff Dawn Reppond states the following as her causes of action against Defendant City of Olathe, Kansas.

1. Plaintiff Dawn Reppond (Plaintiff) is a female resident of Olathe, Johnson County, Kansas.

2. Defendant City of Olathe, Kansas (Defendant) is a municipality operating under the laws of the State of Kansas.

3. Defendant is an employer as defined and within the meaning of 42 U.S.C. § 2000e(b) of Title VII of the Civil Rights Act of 1964, as amended in 1991, and 42 U.S.C. § 12111(5) of the Americans with Disabilities Act Amendments Act of 2008 (ADAAA).

4. Plaintiff is bringing these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq., and the ADAAA, 42 U.S.C. § 12101, et. seq.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

6. Venue is proper because Defendant resides in Johnson County, Kansas in the District of Kansas and/or because a substantial part of the events or omissions giving rise to these claims occurred in Johnson County, Kansas in the District of Kansas within the meaning of 28 U.S.C. § 1391(b).

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging that Defendant engaged in the discriminatory actions that are being raised in this lawsuit, or alternatively, the allegations of Plaintiff's lawsuit would have arisen from the investigation of Plaintiff's Charge of Discrimination.

8. A Notice of Right to Sue has been issued by the Equal Employment Opportunity Commission and this action is being brought within ninety (90) days from the issuance of such Notice of Right to Sue.

9. Plaintiff has fulfilled all conditions precedent to the bringing of this claim and has duly exhausted all administrative procedures in accordance with the law prior to instituting this lawsuit.

## ALLEGATIONS COMMON TO ALL COUNTS

10. Plaintiff began working for Defendant at the Olathe Community Center on or about December 7, 2015.

11. At all relevant times, Plaintiff held the job position of Customer Service Representative III with Defendant.

12. In or around January 2020, Plaintiff's doctor diagnosed her with anxiety and depression and prescribed medication for Plaintiff to take to treat her health condition.

13. Plaintiff shared her diagnosis and treatment with her supervisor Mario Thomas (Thomas), the Assistant Manager at the Olathe Community Center.

14. Plaintiff also explained to Thomas that she suffered from panic attacks.

15. In response, Thomas told Plaintiff that she could not take any medications for her panic attacks while she was at work.

16. In or around early January 2021, Plaintiff went to human resources and spoke to Kaneisa Giles (Giles).

17. Plaintiff reported to Giles that Kelly Delay (Delay), a female Customer Service Representative III, was creating a hostile and offensive work environment and bullying and harassing her at work.

18. Plaintiff explained that the harassing and bullying behavior had been going on for quite some time.

19. Plaintiff also told Giles that she had reported this to Thomas but nothing was done and the harassment and bullying had continued.

20. During Plaintiff's meeting with Giles, Giles asked Plaintiff why she had not come to her earlier with her concerns.

21. Plaintiff told Giles that it was perceived by many employees who work for Defendant that employees who complain are retaliated against and fired.

22. Giles told Plaintiff she was sorry she felt that way and told Plaintiff she would look into the matter.

23. Shortly after meeting with Giles and during the week of January 11, 2021, Plaintiff began having panic attacks at work.

24. Although Plaintiff had experienced panic attacks before, she had not experienced any severe panic attacks at work.

25. Plaintiff did not take any medication for her panic attacks at work because Thomas had prohibited Plaintiff from doing so.

26. Plaintiff believes that if she had been allowed to take medication at work to treat her panic attacks that she would have been able to prevent her attacks and/or recover from her attacks more quickly and effectively.

27. On or about January 14, 2021, Plaintiff suffered a panic attack at work and talked to Thomas about her panic attack.

28. During their conversation, Thomas asked Plaintiff why she was having the attacks.

29. Plaintiff explained that she believed she was experiencing the attacks because of the way Delay treated her at work and how that treatment caused her stress and anxiety.

30. The next day, on or about January 15, 2021, Plaintiff had another panic attack at work which was more severe.

31. Plaintiff started crying and couldn't stop and went into the bathroom to try and calm down.

32. When Plaintiff came out of the bathroom, Thomas and Shelby Duncan (Duncan), the Aquatics Manager, spoke to her.

33. Thomas told Plaintiff to calm down.

34. Plaintiff tried to calm down, but she told Thomas that she wasn't able to do so.

35. Plaintiff told Thomas and Duncan that she did not want to be alive anymore.

36. Thomas then pulled Plaintiff into a room to talk to her alone.

37. Thomas called New Directions, a counseling service, and he also called Plaintiff's husband to come and pick her up from work.

38. After Plaintiff left work, Giles from Human Resources called Plaintiff.

39. Giles told Plaintiff she heard what happened at work, and she told Plaintiff she was placing her on paid administrative leave for a week.

40. Plaintiff did not request Defendant place her on administrative leave.

41. Defendant initially told Plaintiff that she could return to work on January 25, 2021.

42. On or about Friday, January 22, 2021, Giles contacted Plaintiff and informed her that she was going to keep Plaintiff off work with pay for an additional week.

43. Plaintiff did not request this additional leave from Defendant.

44. Plaintiff assumed Defendant extended her leave because Defendant was investigating Plaintiff's report about Delay.

45. More than one week passed before Plaintiff heard from Giles.

46. When Giles next contacted Plaintiff, Giles asked Plaintiff to come into her office on or about February 3, 2021.

47. On or about February 3, 2021, Plaintiff met with Giles and Danielle Nunnally (Nunnally), another human resources employee, at City Hall.

48. During this meeting, Giles asked Plaintiff to discuss her concerns about Delay.

49. Plaintiff explained how she felt Delay was harassing and bullying her at work.

50. Giles asked Plaintiff several questions, including asking Plaintiff whether she ever called Delay names or whether she threatened to hurt Delay.

51. Plaintiff told Giles and Nunnally that she had commented to Thomas that Delay was being a bitch to her at work.

52. Plaintiff also told Giles and Nunnally that Delay made her so frustrated that Plaintiff wanted to punch something, but Plaintiff then immediately said that she wasn't really going to punch anything, but she was just tired of Delay's behavior.

53. Plaintiff also talked to Giles and Nunnally about her diagnosis of anxiety and depression and the panic attacks she had at work.

54. Plaintiff shared with Giles and Nunnally how Thomas told her she could not take medication to treat her anxiety while she was at work, which made it more difficult for Plaintiff to treat her anxiety.

55. At the conclusion of their meeting, Giles told Plaintiff she was placing her on administrative leave with pay for another week or week and one-half.

56. On or about February 23, 2021, Plaintiff attended another meeting at City Hall with Giles and Nunnally.

57. During this meeting, Giles told Plaintiff she was being fired allegedly because she had called Delay a bitch and expressed wanting to hit her.

58. Plaintiff told them that she would never hurt anyone, including Delay, and that what she said about punching a wall was just an expression to explain how bad things had gotten at work, not a threat to harm Delay!

59. Prior to her termination, Plaintiff had received positive reviews and had never been disciplined.

60. Plaintiff was able to perform the essential functions of her job with a reasonable accommodation and/or without any accommodation, but Defendant failed to accommodate her.

## **COUNT I – DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA**

61. Plaintiff hereby incorporates by reference into Count I all allegations contained in all preceding paragraphs herein against Defendant.

62. Plaintiff suffered from a disability/physical impairment, i.e. anxiety and depression, which substantially limited one or more of Plaintiff's major life activities, including, but not limited to, her ability to breathe, concentrate, think, communicate and/or work within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

63. In addition, or in the alternative, Defendants perceived or regarded Plaintiff as suffering from a disability/physical impairment within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

64. In addition, or in the alternative, Plaintiff had a record of a disability/physical impairment, i.e. anxiety and depression, which substantially limited one or more of Plaintiff's major life activities, including, but not limited to, her ability to breathe, concentrate, think, communicate and/or work within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

65. Plaintiff was able to perform the essential functions of her position with or without reasonable accommodation.

66. Defendant failed and/or refused to provide any reasonable accommodation to Plaintiff, including failing to accommodate Plaintiff by allowing her to take prescribed medication when she suffered from a panic attack at work.

67. Additionally, Defendant discriminated against Plaintiff by placing her on forced administrative leave and/or terminating her employment because Plaintiff suffered from a disability/physical impairment, i.e. anxiety and depression, which substantially limited one or more of Plaintiff's major life activities, because Defendant perceived and/or regarded Plaintiff as suffering from a physical or mental impairment, and/or because Plaintiff had a record of a disability/physical impairment, i.e. anxiety and depression, which substantially limited one or more of Plaintiff's major life activities.

68. Defendant's actions, as alleged herein, constitute a violation or violations of the ADAAA, 42 U.S.C. § 12101, et seq., including 42 U.S.C. § 12102(3)(A), and its accompanying regulations.

69. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

70. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

71. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

72. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other and further relief as the Court deems just and proper.

### COUNT II – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT AND THE ADAA

73. Plaintiff hereby incorporates by reference into Count II all allegations contained in all preceding paragraphs herein against Defendant.

74. Plaintiff engaged in protected activity by, including without limitation, reporting her good faith and/or reasonable belief to Defendant's management and/or human resources employees that she was being harassed/discriminated against at work and/or experiencing a harassing/hostile work environment.

75. In addition, or in the alternative, Plaintiff engaged in protected activity by, including without limitation, asserting her rights under the ADA as amended, including reporting that Defendant was not accommodating her disability.

76. As a result of Plaintiff reporting her good faith and/or reasonable belief to Defendant's management and/or human resources employees that she was being harassed/discriminated against at work and/or experiencing a harassing/hostile work environment and/or as a result of Plaintiff asserting her rights under the ADA as amended, including reporting that Defendant was not accommodating her disability, Defendant retaliated against Plaintiff and caused her to suffer adverse employment actions, including, but not limited to, placing Plaintiff on

forced administrative leave and/or terminating her employment in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq. and/or 42 U.S.C. § 12203(a).

77. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

78. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

79. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

80. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all Counts and all allegations contained herein.

## REQUEST FOR PLACE OF TRIAL

Plaintiff hereby requests that the trial of this matter take place in Kansas City, Kansas.

Respectfully submitted,

**EMPLOYEE & LABOR LAW GROUP OF KANSAS CITY, LLC**

By:   /s/Kristi L. Kingston
      Kristi L. Kingston, KS Bar No. 19126
      12920 Metcalf Avenue, Suite 180
      P.O. Box 25843
      Overland Park, KS 66225
      Ph: (913) 286-5200
      Fax: (913) 286-5201
      Email: kristi@elgkc.com

**ATTORNEY FOR PLAINTIFF**